Good morning, Your Honors. May it please the Court, Cara DeVito for Defendant Appellant Marcos Lomeli, and Your Honors, Mr. Lomeli is present in court this morning. Good morning. Your Honors, it's been a long morning. I sat through the Court's calendar. So I believe the issue of statutory tolling in this case has been resolved by a panel of this circuit with the issuance of the Gaston v. Palmer decision in October of 2004. Last week I provided the Court with a cite to that case. Gaston addressed both whether or not petitions for habeas corpus in the California State Court are properly filed within the meaning of 2244 D2, and it also addressed whether or not there can be interval tolling for applications that are filed in a lower court in California after a habeas petition already has been denied by the California Supreme Court. And the Gaston decision's resolution of those two issues both favor Mr. Lomeli. Having said that, does the Court have any specific issues about that, questions for me of that, or shall I go through the analysis for you? LOMELI Apparently not. Okay. Then I'll reserve the rest of my amendment for about a minute. Thank you. Thank you. Good morning, Your Honors. Robert David Britton, Deputy Attorney General, appearing on behalf of Appellee. May it please the Court, I would like to spend maybe one minute on equitable tolling and then spend the remainder of my time on the statutory and gap tolling issue. Suffice it to say that the District Court's findings on the equitable tolling issue have clearly not been shown to be clearly erroneous in this case. The circumstances alleged by appellant, the prison lockdowns, the library closures, the jail transfers, these are part of normal, everyday prison life, to be expected to be taken to court and into account by prisoners in preparing their petitions and are certainly merely ordinary circumstances, not extraordinary. And in addition, Petitioner never showed a causal connection between these extraordinary circumstances that he alleged and his tardiness because, as pointed out by the District Court, which awarded him 110 days of equitable tolling for the delay in receipt of the denial of the Court of Appeal, denial of his last petition and for prison lockdowns and for library closure. The District Court stated, considering that Petitioner presents the same claims that he presented to the Superior Court and to the California Supreme Court, that Petitioner was ample time to prepare and to file a timely petition. And of course, he cannot argue to this Court that he erroneously believed that he had to present those claims to the Court of Appeal after obtaining the denial from the California Supreme Court, which exhausted his claims. In the first place, he had a letter from the appellate attorney guiding him on the process, telling him he should file in the Superior Court, and then he could bypass the Court of Appeal and go straight to the California Supreme Court and exhaust his claims in the California Supreme Court, and warning him that he had only one year under the ADPA, but that the petitions in the State Court would toll the statute until he received the final decision from the California Supreme Court. That was his decision. And of course, this Court knows that ignorance of the law is no excuse, and even negligent or erroneous advice from an appellate attorney do not constitute extraordinary circumstances. And it is clear from what Petitioner stated in his objections to the R&R in this case that the real reason that he went to the Court of Appeal was that he simply was deciding at the last moment to disregard the advice that he had received from the attorney, which was accurate advice. And... Well, he's allowed to go to the Court of Appeal, isn't he? He's allowed to, yes. And the California Supreme Court dismissal wasn't on the merits, was it? That's correct. It was based on procedural bars, which are exhaustion, which do constitute exhaustion. And after he exhausted, that was the last rung of the ladder. Exhaustion was final, and therefore he should go immediately to this Court. That is the whole purpose of the statute. Once exhaustion is completed, then it behooves him to go to federal court. He can file simultaneous petitions in the state courts, but the deadline, the clock is running once that Supreme Court denial is final. Now, didn't the Court of Appeals decide it on the merits? No. Well, no. That is one allegation made by appellant in the reply brief to a Supreme Court petition, to which I take issue. On page four of the reply brief, there's a statement. None of the California courts dismissed any of his petitions for delay. Instead, every one of the four petitions was denied on the merits. Well, if the Court looks on page 48 of the excerpts of record, the California Court of Appeal, Division 5, denied the first petition, that being the third petition, in other words. First of all, saying the petitioner is procedurally defaulted from challenging the validity of his 1998 conviction due to his delay in seeking relief. And then it says the petition is also denied on the merits. That's correct. Okay. Well, when the Court acts on the merits, that's an act on the merits. So the answer to my question was whether the Court of Appeals denied it on the merits was yes. Yes. It did deny it on the merits, but that was in the alternative. And it clearly, under Kerry v. Saffold, Kerry v. Saffold says it ends the matter if the Court states that it is denying it, specifically denying it as untimely. Even if it proceeds and denies it on the merits? Yes. And in the second Court of Appeal denial, it was in addition, that denial was denied as being unjustified success of habeas corpus petition and due to his delay in seeking relief. These are two express statements that it is being denied as untimely. Now, the policy under the ADPA statutory tolling provision of 2244D is to encourage exhaustion and to promote prompt filing in the federal court. Under Kerry and Nino and Biggs, the round is full or complete once exhaustion is completed. In other words, quote, as stated in Ramirez, when the California Supreme Court's denial is final. And Ramirez cites Kerry v. Biggs. Therefore, there is no gap tolling after exhaustion is achieved under Kerry. A new petition at the same or lower level triggers a new round unless two conditions are met. One is if the court denies under Swain and says we need more facts and the court does not deny as untimely. Unfortunately for appellant here, that's exactly what the Courts of Appeal did. And therefore, if this court will rely on Kerry and King and Chavez, C-H-A-V-I-S, it must find that the Court of Appeal's statement that the petitions were being denied as untimely precludes his being able to argue that the round had not been completed when the California Supreme Court denied that petition. Do I understand correctly that, I think it's Kerry, but at this moment they're all a little different. It makes reference to whether or not the court has denied on the merits. It's taking that as an inference there must not have been a timeliness problem if the court went on to deny on the merits. And that your position is that the current case is different because the Court of Appeal was explicit in touching both bases, but the part that you're concerned about is the court was explicit in saying that it was untimely even though it did go on to discuss the merits. That's correct. Did any of the previous cases involve orders that touched both bases or cited alternative grounds? No. In the Ninth Circuit cases that I have researched, I have not found one that did that in the alternative. So we may be the first to raise that question. Could be. If the court will look at these cases, they all speak in terms of, and especially Kerry, filings that proceed, quote, upward, progressively higher steps of the exhaustion process, the time between the lower court decision and filing in a higher court. And Kerry describes this as basic appellate review in California. Gaston seems to make clear that it's not limited to an upward direction and we're bound by Gaston. Well, Gaston is the one case that goes sideways. And Gaston is, as the dissent pointed out, one in which the petitioner went up, down and sideways on the exhaustion ladder. But we contend that Gaston is distinguishable for two reasons. In Gaston, none of the petitions were denied for untimeliness. All were denied on the merits. Here, the Court of Appeal denied both expressly as untimely. In addition, in Gaston, the petitioner never sought reversal by the lower court of a decision by a higher court. Whereas here, appellant went to the California Supreme Court and then went down to the Court of Appeal seeking relief and, in essence, reversal from a lower court of a higher court decision on the same claims. Now remember that in Gaston, the first petition to the California Supreme Court was not a habeas petition on the merits or with any claims submitted. It was simply a petition asking for relief from default because Gaston represented himself on appeal and then neglected to file the brief on time. So he went to the California Supreme Court the first time simply asking for relief from default. Therefore, when he went down to the lower courts again, to the Superior Court and then to the Court of Appeal, he was not asking them to second-guess or review a decision made already by the higher court, by the California Supreme Court. It was now presenting these claims and he went up that ladder to the California Supreme Court. That is not what happened here. The California Supreme Court denied it on time, I guess, right? Is that why the California Supreme Court denied it? In our case? Yes. In our case, the California Supreme Court denial is a mixture of... What page is that in the record? The index is not very easy to follow. 34. It is a mixture of denials under Swain, Dixon, Lindley, Duvall, and Yerko. Well, that's nice. Now, in Gaston, I think Gaston would suggest that that might still be alive with the citation to Swain. That doesn't speak to the subsequent filings to the Court of Appeal or the denials by the Court of Appeal. Correct, because in Gaston, remember that in Gaston, there was no second petition to the California Supreme Court. And Gaston recognized the language that its rule only applies if the Court does not apply it as untimely, does not deny it as untimely. Gaston makes reference specifically to citations in the denial there to Swain and Duvall and said, okay, we'll read this as being like the grant of a demurrer. There's a procedural problem. He hadn't put it specifically enough and given us enough. So you can read that, and under Gaston, there's a suggestion we're supposed to read the denial by the Supreme Court as one that wasn't simply untimely, but there's a procedural problem perhaps of a different kind that could be cured. The problem here, as I understand your argument, is that he goes back to the Court of Appeal, and there he gets turned down on a timeless basis. That's one problem. Another problem is that he didn't – if he really wanted to cure to the deficiency, to remedy the deficiency and to further elaborate and perhaps cure the Swain problem, he should have filed a second petition in the California Supreme Court, the very court, not to go to a lower court to remedy that. Where does it say that he has to do that? Because in Gaston, he did go back down, and that was okay. No, he did not go back down to remedy anything that had been stated by the California Supreme Court. In Gaston, his only petition to the California Supreme Court was seeking relief from procedural default. The Court of Appeal issued a ruling regarding Swain, and then he started a round of trial court, Court of Appeal, California Supreme Court. In addition, this court should be cognizant of the fact that at no time did the petitioner in this case state to the Court of Appeal or to anyone when he was filing that the reason I'm filing here is because I've been told that I need to provide further, more particularized facts so that I need to beef up my factual showing under Swain. He said the only reason I'm filing here is because I have begun to doubt the advice of my appellate attorney and think that the federal courts will not even – will automatically deny my petition unless I've gone to the Court of Appeals. He was not concerned about elaborating or correcting a deficiency in the record. Gaston also, I should point out to the Court, I'm sure the Court is aware, we have filed for rehearing Gaston, and the panel has asked for further briefing on that matter. If we learn from Welch the language up the appropriate ladder, from Nino that the petitions must be filed at the next higher appellate level, and Ramirez repeats that language, that this is all an exhaustion process that goes up, and if you start at the top, then you have exhausted and that completely ends the round. And to end, I would simply quote from Tinker, the Seventh Circuit case that I cited in my brief, Congress could not have intended tolling indefinitely by the simple expedient of filing repeated habeas petitions. Unless the Court has any further questions, we would be prepared to submit and I'm likewise anxious to go read the new Supreme Court opinion. Well, set aside the afternoon. Your Honors, I want to clarify something immediately. When the California Supreme Court denied what was the second petition Mr. LeMay had filed to that point, it did not deny it for antinomious grounds at all. If the Court reviews the opening brief, pages 6 to 7, at footnote 4, I cited for the Court the six citations the California Supreme Court relied on in denying that second petition, and if you'll allow me, I will read from this. Those cases stand for the propositions that conclusory allegations insufficient to warrant issuance of a requested writ is not a ruling on the merits of the issues, that a habeas petitioner is not entitled to raise claims which could have been raised on direct appeal, that habeas corpus is not meant as a way to retry issues of fact, review a trial court's evidentiary rulings, or correct procedural errors, that a petitioner must state with particularity the ground upon which relief is sought, and that a claim denial of speedy trial rights must be made by pretrial motion and a writ of prohibition. None of those six cases talk to the timeliness of filing an application for habeas relief. Having said that, it's clear that the California Supreme Court did not rely on delay in denying that petition, and as Judge Clifton noted in the Gaston opinion, at page 1016, I'm sorry, 1013, another panel of this circuit determined that denial by reference to Swain and Duvall is essentially the same thing as granting a demur with leave to refile. It's an invitation to a defendant to bring his application again. Is there any requirement that if you start in the Supreme Court, they then give a procedural denial, such as the type you are referring to, that you then must make your second filing in that court rather than the court of appeals? No, Your Honor. There's no case law from this circuit or – well, there's no case law from this circuit that says that. I'm unaware of whether any other circuit says it, but I doubt any other circuit's decision in this instance would be applicable. Well, I believe not many court states have the procedure that California has. Exactly. California has what Gaston describes as two priorities. Is there anything in the California court rules that – Yeah. There's California Court Rule 56, which says you can bring an original writ in any court. The only thing that Rule 56 says is that when you bring a writ in a court of appeal and it's denied, you have the option of either refiling it as an original writ in the California Supreme Court or filing a petition for review from the denial of the – in the court of appeal of the original writ. You have an option at that point. But other than that, you can file an original writ in a superior court, a court of appeal, or the Supreme Court. You can file it at any time. There's no specific deadline, but laches and reasonableness are the guidelines that the courts will use in determining whether or not there was delay. Your Honors, the Court mentioned during the State's argument that the denials by the California court of appeal of the third and fourth applications filed were for untimeliness, but also were expressly on the merits. And, again, with reference to Gaston at page 1016, there's a preference for – well, Gaston refers to it as the State opportunity goal of AEDPA. There's a preference in giving deference to the State's rulings. Therefore, I would suggest that contrary to what the State argued, the timeliness is not what we look to in the fact that these petitions were delayed. What we look to is that they were delayed on the merits. If the Court is concerned about the fact that they were denied for untimeliness, however, I remind the Court of its decision in Morales v. Calderon, which is cited in the opening brief at page 31, footnote 17. And in that case, this Court noted that the California courts simply do not apply laches or bars of unreasonable delay with any kind of regularity. It's very much catch-as-catch-can in the California courts, which puts Petitioners such as Mr. O'Donnelly at a great disadvantage. And? Well, let me stop on that for a second. I certainly understand how that speaks to the independent State ground possible argument. I look at the facts of this case, and I guess I can stay with you through the California Supreme Court, and I hear what you have to say about the first California Court of Appeal petition. I got a real problem understanding going back to the California Court of Appeal again, having already been told untimely and merits you lose, to go back to the same Court and knock on the door with what is essentially the same request, having already been told you're untimely. It's sort of like inevitable that the second time around, he's going to again be told he's untimely, which he was. So I understand the dilemma you raised that says, well, what's he supposed to do? Maybe in leading up to number three, but what's the quandary about number four? I just have no understanding as to why he'd go to the California Court of Appeal for number four. I think it's easier, Your Honor, if I may. Okay. Remember, bear in mind this third petition, the first one filed in the Court of Appeal, is denied for untimeliness, but also denied on the merits. The Court of Appeal specifically says there's no ineffective assistance by your trial counsel or your appellate counsel. You go to the fourth petition. This one focuses specifically on those allegations of IAC, of trial and appellate counsel. This one expresses in greater detail why those attorneys were ineffective. And this petition, the fourth one, attaches, as an exhibit for the first time, attaches a copy of that letter from trial counsel that says you have to exhaust your issues in the State court before you go to the Federal court. In essence, what the fourth petition reflects is Mr. Lomeli believed that in order to fully exhaust his issues, he had to explain to the Court of Appeal in greater detail why there was IAC, because the Court of Appeal had found he hadn't met his burden on the merits when it denied his third petition. And, Your Honors, it worked. The fourth petition was denied for untimeliness, but it also was denied expressly on the merits, which, again, preserves the issue, exhausts the issue. Your Honors, at the time I provided the court the cite to Gaston, at the time I argued it this morning, I was unaware that additional briefing has been requested in that case, and I'm not sure what that does to the citability of that case. But in the event it's no longer good authority, I would suggest to the Court that at least the reasoning of it remains quite sound and should be followed by this Court. Does the Court have any questions of me? Thank you, Your Honors. Case just argued will be submitted. The Court will stand in recess for the day.
judges: Reinhardt, Clifton, Weiner